# United States District Court

_____Middle_____ RESTRICTED DISTRICT OF _____Alabama_____

RECEIVED
2007 MAY -7 P 1:37

In the Matter of the Search of
(Name, address or brief description of person, property or premises to be searched)

Guerrin SAINTIL aka ERNEST MAXINO,
aka Rodney SAINTIL, B/M, DOB: 11/1/1974,
SSN: 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, and his residence located at
4111 Oconee Drive, Apt H, Montgomery, Alabama 36110;
to include the following vehicles: a 2002 Nissan Maxima, green in color
with Alabama Wildlife Tag No. 2K94R and a 1997 BMW, with
Alabama Wildlife Tag No. 3K24J.

**APPLICATION AND AFFIDAVIT
FOR SEARCH WARRANT**

CASE NUMBER: 2:07mj50-TFM

I _____RONALD J. PETERSON_____, being duly sworn depose and say:

I am a(n) _____SPECIAL AGENT, ATFE_____ and have reason to believe
                     Official Title

that ☐ on the person of or ☒ on the property or premises known as (name, description and/or location) Guerrin SAINTIL aka ERNEST MAXINO, aka Rodney SANTIAL, B/M, DOB: 11/1/1974, SSN: 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, and his residence located at 4111 Oconee Drive, Apt H, Montgomery, Alabama 36110; to include the following vehicles: a 2002 Nissan Maxima, green in color with Alabama Wildlife Tag No. 2K94R and a 1997 BMW, with Alabama Wildlife Tag No. 3K24J.

in the _____MIDDLE_____ District of _____ALABAMA_____

there is now concealed a certain person or property, namely (describe the person or property to be seized)

See Attachment A, incorporated herein by reference as if fully restated herein.

which is (state one or more bases for search and seizure set forth under Rule 41(b) of the Federal Rules of Criminal Procedure)

Property that constitutes the fruits, evidence, and instrumentalities of crimes against the United States concerning a violation of Title __21__ United States Code, Section(s) __846 and 841(a)(1)__.

The facts to support a finding of Probable Cause are as follows:

See Attached Affidavit hereby incorporated by reference as if fully restated herein.

Continued on the attached sheet and made a part hereof.    ☒ Yes    ☐ No

Signature of Affiant
Ronald J. Peterson, Special Agent
Bureau of Alcohol, Tobacco, Firearms and Explosives

Sworn to before me, and subscribed in my presence

April 26, 2007 @ 9:35 a.m.                    at Montgomery, Alabama
Date                                            City and State

Terry F. Moorer, United States Magistrate Judge
Name and Title of Judicial Officer            Signature of Judicial Officer

## ATTACHMENT B

## PROPERTY TO BE SEIZED

(1)  Books, records, ledgers, and/or writings which record the receipt and/or distribution of controlled substances including cocaine, crack cocaine as well as any other memoranda relating to the transportation, ordering, purchase, delivery and/or distribution of controlled substances, which writings and records are contraband as well as evidence;

(2)  Papers, tickets, notes, schedules, receipts, and other writings and objects including but not limited to gasoline receipts, air travel vouchers, and motel/hotel embossed articles, which do or tend to establish domestic and/or interstate travel in interstate commerce;

(3)  Addresses and/or telephone books and papers and other writings reflecting names, addresses, and/or telephone numbers as well as bills and paid receipts reflecting telephone toll records, any and all of which reflect the names, addresses, and telephone numbers of aliases or code names of both known and unknown co-conspirators in the above-described criminal activity, as well as other indicia of telephone usage and service including pay telephone usage which indicia includes, but is not limited to, telephone credit cards, large amounts of nickel, dime and/or quarter currency, and telephone paging devices which are carried on or about the persons to receive incoming notice or messages and which are activated by telephone usage;

(4)  Currency of the United States including paper and coin currency, also precious metals, jewelry, financial instruments, including but not limited to, negotiable commercial paper, and currency obtained, connected with and/or possessed to facilitate the financing of illicit drug trafficking;

(5)  Photographs and videotapes, in particular, photographs or videotapes of co-

conspirators, of assets, and/or of controlled substances, in particular, cocaine or crack cocaine;

(6) Safes, strong boxes, and/or other secure receptacles for the maintenance of valuable items and/or important documents including books, records, and other writings as well as United States currency as described above, and any keys or other evidence of the existence and usage of any lockers, safety deposit boxes or other secure receptacles situated elsewhere than at defendant property;

(7) Articles of false identification;

(8) Radio electronic equipment including but not limited to transceivers, receivers, scanners, antennae, RF detectors, walkie talkies, wireless transmitters as well as other electronics which are used ancillary to such equipment, including but not limited to, electrical calibration equipment, meters and test equipment;

(9) Computers or other electronic devices which are capable of storing information, including, but not limited to computers, lap tops, floppy disks, cd roms, zip disks, hard drives, and personal data assistants (PDA).

(10) Firearms;

(11) Controlled substances, in particular, cocaine or crack cocaine;

(12) Paraphernalia for packaging, cutting, weighing, and distributing controlled substances, including but not limited to, scales, bags, pipes, and duct tape;

(13) Any and all other material evidence of violations of Title 21, United States Code, Sections 848, 853, 841 (a) (1), 843 (b), 846, and 881, together with fruits, instrumentalities and evidence of crimes at this time unknown.

RECEIVED

2007 MAY -7 P 1:31

AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Ronald Peterson, being duly sworn, depose and state that:

Your affiant is a Special Agent with the Bureau of Alcohol, Tobacco, Firearms & Explosives (ATF), United States Justice Department, and is currently assigned to the Mobile Field Office, and has been so employed since July of 2001.

I am a graduate of the Federal Law Enforcement Training Center and the ATF National Academy; as a result of my training and experience as an ATF Special Agent, I am familiar with Federal criminal laws.

The following is based upon my personal knowledge and information provided by other ATF agents, Selma Police Officers, U.S. Postal Inspectors, DEA agents other law enforcement officers, members of the public and the review of reports and other sources.

The information in this affidavit is not an exhaustive account of my knowledge of the events described. Rather, this is a summary sufficient to establish probable cause of violations of 21 United States Code Sections 846 and 841(a)(1).

1. On December 9, 2005, ATF SA John Bordages and I interviewed a Confidential Source (hereinafter referred to as CS-1) concerning the gang activity in the area of Saint Phillips Street, Selma Alabama. CS-1 stated a person known as "Black", First Name Unknown (FNU), Last Name Unknown (LNU), has been bringing crack cocaine and powder cocaine from Florida. According to CS-1, Black has been transporting the cocaine since the early 90's. CS-1 further stated that Black was living, in a green apartment, on Keller Alley, in Selma, Alabama and Black is driving a Brown Malibu station wagon.

2. On June 6, 2006, TFA Susan Smith and I conducted an interview, with CS-2, concerning the "Saint Phillips Boys" gang and the Saint Phillips Boys source of powder cocaine and crack cocaine. CS-2 stated he/she has been present when, a person CS-2 knows as "Black" (later identified as Guerrin SAINTIL, see paragraph 6) has delivered "crack cocaine" to members of the Saint Phillips Boys. At the time of the interview, SAINTIL was dating Tammy WARD. CS-2 stated SAINTIL had a residence located at 2000 Keller Avenue, apartment E, Selma, Alabama and SAINTIL also has a residence in Montgomery, Alabama. CS-2 stated that SAINTIL has a black/grey Chevrolet station wagon. CS-2 further stated the Chevrolet station wagon was brown but SAINTIL has painted the vehicle.

3. CS-2 stated that, since approximately May of 2004, CS-2 has been purchase/receiving between 2 to 3 ounces of crack cocaine, a week, from SAINTIL. On one occasion, CS-2 received 4 ounces of crack cocaine from SAINTIL. In January or February of 2006, CS-2

was at SAINTIL's residence, at 2000 Keller Avenue, Apartment E, and SAINTIL had 3 kilos of cocaine. CS-2 was present while SAINTIL "cooked" the powder cocaine into "crack cocaine". CS-2 has also been present, on 5 or 6 occasions, when SAINTIL delivered, approximately ½ kilo, crack cocaine to Jarkarta BONNER.

4.  On June 23, 2006, AUSA Michelle O'Brien and AUSA John Cherry and I conducted a follow-up interview of CS-1 and CS-1 was shown a driver's license photograph, of Guerrin SAINTIL (B/M, DOB: 11/1/74, SSN: 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), with no identifiers present with the photograph. CS-1 positively identified SAINTIL as person he knows as "Black". CS-1 stated SAINTIL has been selling crack cocaine to the Saint Phillips Boys. According to CS-1, SAINTIL usually sold crack cocaine, but occasionally SAINTIL would sell powder cocaine to the Saint Phillips Boys. CS-1 has purchased crack cocaine from SAINTIL on at least 5 different occasions. CS-1 would purchase between ½ an ounce to 2 ounces of crack cocaine from SAINTIL. CS-1 paid between $800.00 to $850.00 dollars per ounce. CS-1 stated he/she has purchased a total of 4 to 5 ounces of crack cocaine from SAINTIL. CS-1 stated he/she has seen numerous firearms in SAINTIL's apartment. CS-1 has seen an "AK" type assault rifle, a .38 caliber revolver, and 2 pistols of unknown caliber. CS-1 stated SAINTIL was living, in a green apartment, on Keller Alley, in Selma, Alabama and SAINTIL was driving a Brown Malibu station wagon.

5.  On or about June 25, 2006, TFA Susan Smith provided an incident and offence report, dated 4/26/05, to your affiant. On 4/26/05, Selma Police officers responded to a report of shots fired in the area of Keller Avenue and Legrand Street, in Selma, Alabama. Erthur Davis, Terry Ward, and Homer Ward reported, to police, a B/M had fired several rounds into an unoccupied vehicle then went into an apartment on Keller Avenue. Officers recovered nine .223 caliber shell casings from the scene. Erthur Davis, Terry Ward, and Homer Ward identified the apartment. Officers made contact with a B/M, inside the apartment, who identified himself as Rodney SAINTIL. Rodney SAINTIL used a speeding ticket, from inside a tan station wagon, as identification. Rodney SAINTIL gave officers permission to check the apartment for additional suspects. During the search, Officers did not find any additional people in the residence but officers recovered a firearm, in plain view, from on top of the television in the back bedroom. Officers confiscated the firearm due to Rodney SAINTIL having a felony conviction. Rodney SAINTIL stated to police that the resident of the apartment was Ernest MAXINO. Rodney SAINTIL was later identified as Guerrin SAINTIL in paragraph 18 of this affidavit. Moreover, Ernest MAXINO was later identified as Guerrin SAINTIL in paragraph 29.

6.  On June 26, 2006, at approximately 10:30 AM, TFA Susan Smith showed CS-2 a driver's license photograph, with no identifiers present with the photograph, of Guerrin SAINTIL. CS-2 identified the photograph, of SAINTIL, as the subject he/she knows as "Black". CS-2 was also shown photographs of the cinder block apartments located in the 2000 block of Keller Avenue and the 1500 block of Legrande Street in Selma, AL. CS-2 indicated that "Black", SAINTIL, had the last two apartments on the east end of the

apartments. CS-2 stated the apartment on the end, furthest to the east, is the apartment where SAINTIL, "Black", cooked crack cocaine and sold crack cocaine. CS-2 indicated that the second apartment from the east end of the apartments is also one of SAINTIL's apartments and stated SAINTIL kept guns in that apartment

7. On July 11, 2006, AUSA Michelle O'Brien, AUSA John Cherry and I interviewed CS-2 concerning the gang activity in the area of Saint Phillips Street, Selma Alabama. CS-2 identified a person, knows as "Black", First Name Unknown (FNU), Last Name Unknown (LNU), who had been bringing crack cocaine and powder cocaine from Florida. Black has been transporting the cocaine, from Florida to Alabama, since the early 90's. CS-2 stated Black was living, in a green apartment, on Keller Alley, in Selma, Alabama, and Black is driving a Brown Malibu station wagon. This information was corroborated by information given by CS-1, see paragraph 1.

8. On July 11, 2006, AUSA Michelle O'Brien, AUSA John Cherry and I conducted an interview, with CS-3, concerning the "Saint Phillips Boys" gang and the Saint Phillips Boys source of powder cocaine and crack cocaine. CS-3 was shown a driver's license photograph, of Guerrin SAINTIL (B/M, DOB: 11/1/74, SSN: 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), with no identifiers present with the photograph. CS-3 positively identified SAINTIL as person he/she knows as "Black". CS-3 stated SAINTIL was living, in a green apartment, on Keller Alley, in Selma, Alabama and SAINTIL drove an "off brown" Chevrolet station wagon. CS-3 described SAINTIL as "the man" and stated that SAINTIL had been selling crack cocaine to the Saint Phillips Boys for approximately 2 years. CS-3 stated that SAINTIL only dealt in "weight" (large amounts) of crack cocaine.

9. On July 25, 2006 AUSA Michelle O'Brien and I conducted a follow-up interview of CS-3 provided additional information concerning Guerrin SAINTIL, "Black". CS-3 has known SAINTIL "Black" for approximately 4 years. CS-3 stated that on one occasion while he/she was at SAINTIL's residence, on Keller Avenue, Selma Alabama, CS-3 observed SAINTIL with a box which contained 4 or 5 "bricks" (kilos) of cocaine. The CS-3 stated that he/she did not know who was supplying SAINTIL with cocaine.

10. On August 2, 2006, Alabama State Troopers, Selma Police Officers and ATF Agents executed a federal search warrants and federal arrest warrants at 1413, 1421, 1431, and 1435 Saint Phillips Street in Selma, Alabama. Agents arrested numerous members of the Saint Phillips Boys gang and recovered firearms and narcotics during the search of the residences.

11. Subsequent to the arrest, I conducted proffer interviews with members of the Saint Phillips Boys and the following information was relayed, to me, concerning the Saint Phillips Boys source of powder cocaine and crack cocaine.

   a. Kashif NORWOOD stated a person known as "Black" has been selling

3

crack cocaine and powder cocaine to everyone on, the block, Saint Phillips Street. NORWOOD stated that he purchased ¼ ounce to 11 grams of crack cocaine, 2 to 3 times a week from Black. Kashif NORWOOD paid between $180.00 for ¼ ounce of crack cocaine and $300.00 for 11 grams of crack cocaine. Kashif NORWOOD stated he only purchase crack cocaine from Black. Black lived on Keller Street, in Selma, Alabama. Kashif NORWOOD would go to Black's apartment to purchase crack cocaine. Kashif NORWOOD stated that on one occasion he saw 1 "brick", 1 kilo, 36 ounces, of crack cocaine at the apartment. NORWOOD stated he has purchased, ¼ ounce to 11 grams, crack cocaine on more than 30 or 40 occasions.

b. Derrick Daniels stated he started purchasing crack cocaine from, a person he knows as, "Black" in 2004. Black was dating Homer WARD's sister and Black lived on Keller Street, in Selma, Alabama. (Previous information indicated that SAINTIL was dating Tammy Ward, see paragraph 2) Derrick DANIELS stated the first time he purchase, crack cocaine from Black he purchased 1 gram of crack cocaine for $40.00 dollars. After the initial purchased Derrick DANIELS purchased 2 to 3 grams of crack cocaine a day for approximately 4 to 6 months. Derrick DANIELS stated that Darrel THOMPSON, Jarcarta BONNER, Christopher FORD were also purchasing crack cocaine from Black. Derrick DANIELS stated he has also seen Daniel JONES, "Big Danny" at Black's residence.

c. Antwand NORWOOD identified Guerrin SAINTIL, "Black", from a photo, as a "major supplier" for Selma, Alabama. From approximately June of 2005 to July of 2006, Antwand NORWOOD purchased powder and crack cocaine, from SAINTIL. Antwand NORWOOD went to SAINTIL's residence, located on Keller Ave., or to a pool hall, located on Marie Foster Ave., owned by SAINTIL, to pick up the powder and crack cocaine. Antwand NORWOOD stated that SAINTIL also kept firearms at the residence on Keller Avenue. Antwand NORWOOD saw a shotgun "a gauge" and a pistol, which NORWOOD believed was either a 9mm or .40 caliber firearm. When Antwand NORWOOD started purchasing from SAINTIL, he would purchase "a split", of powder cocaine, for either $1,400.00 or $1,500.00 dollars. Antwand NORWOOD stated a "split" was 2 ¼ ounces. Antwand NORWOOD occasionally purchased crack cocaine from SAINTIL. When Antwand NORWOOD purchased crack cocaine from SAINTIL, he paid $200.00 dollars for ¼ ounce, between $350.00 to $375.00 dollars for ½ ounce, $700.00 to $750.00 dollars for an ounce of crack cocaine. Antwand NORWOOD purchased powder cocaine

4

at least 2 times a week. Antwand NORWOOD further explained that there were occasions when he purchased powder or crack cocaine "every day" from SAINTIL. Antwand NORWOOD stated that in June of 2006, he purchased 13 ½ ounces of powder cocaine, from SAINTIL, for $8,300.00 dollars and the 13 ½ ounces was the most he purchased from SAINTIL at one time. Antwand NORWOOD stated on one occasion, between July and September of 2005, SAINTIL had 1 kilo of powder cocaine and 5 "cookies" of crack cocaine at the pool hall on Marie Foster Avenue. NORWOOD estimated each of the "cookies" of crack cocaine weighed approximately 53 to 54 grams.

d. Frank MCGILL stated he was being supplied crack cocaine from a person he knows as "Black". MCGILL stated he purchased crack cocaine from Black at least 50 times. On each occasion MCGILL purchased from ¼ ounce to ½ ounce of crack cocaine.

e. Laderrick LUNDY stated he purchased his crack cocaine from a person known as "Black". Black lives on the west side of Montgomery and he drives a Brown BMW 745. LUNDY stated the first time he purchased crack cocaine from Black, he purchased a "Big Eight" for approximately $3,200.00 dollars. LUNDY further explained a "Big Eight" weighed 4 ½ ounces. LUNDY stated he has purchased the following amounts of crack cocaine from Black:

2 ¼ ounces of crack cocaine, on at least 3 or 4 occasions, for $1,500.00
4 ½ ounces of crack cocaine, at least 5 to 10 occasions, for $3,200.00
9 ounces of crack cocaine, on at least 4 occasions, for $6,000.00

LUNDY stated on either 3/25/06 or 3/26/06 he purchased 9 ounces of crack cocaine from Black. LUNDY stated when he was arrested with 27 grams of crack cocaine, on 3/28/06, the 27 grams is what remained of the 9 ounces purchased from Black.

f. Daniel JONES positively identified Guerrien SAINTIL, "Black", from a photo. JONES stated he received crack and powder cocaine from a person known as "Black". Black was previously identified as Guerrien SAINTIL. SAINTIL lived in an apartment on the corner of Keller Alley, in Selma Alabama. JONES has been receiving crack cocaine and powder cocaine, from SAINTIL, since approximately the end of 2004. JONES estimated the he received ¼ ounce to ½ ounce of "hard", crack cocaine, from SAINTIL every 2 days. JONES paid SAINTIL $350.00 dollars for ½ ounce of crack cocaine. SAINTIL would "front" crack cocaine to JONES.

5

    After JONES received the money for the crack cocaine, JONES would pay SAINTIL for the crack cocaine. JONES stated SAINTIL "fronted" ¼ ounce to ½ ounce of crack cocaine, to JONES, on at least 20 to 30 occasions. From February of 2004 to March of 2005, JONES has received at least 1 kilo of crack cocaine from SAINTIL. JONES has been present, at the apartment, on Keller Alley, while SAINTIL "cooks" the powder cocaine and makes crack cocaine. JONES stated he has been present, on 7 to 10 occasions, when SAINTIL cooked 1 kilo of the powder cocaine. JONES stated SAINTIL supplied the Saint Phillips Boys. SAINTIL sold Jarkarta BONNER "a 9 piece", 9 ounces, of crack cocaine approximately every 3 days.

   g. Darrel THOMPSON positively identified Guerrien SAINTIL as "Black" from a photo. THOMPSON stated he purchased crack and powder cocaine from a person, from Florida, known as "Black". THOMPSON stated he purchased 3 ounces of crack cocaine, on 2 occasions, from SAINTIL, in 2000. After THOMPSON was injured, in 2005, THOMPSON purchased, 1 ounce of powder cocaine, from Black, on 3 different occasions.

   h. Anthony DANIELS positively identified Guerrien SAINTIL as "Black" from a photo. Anthony DANIELS stated he purchased crack and powder cocaine from a person, from Florida, known as "Black". Anthony DANIELS purchased crack cocaine and powder cocaine from SAINTIL from approximately March of 2005 until he was arrested. Anthony DANIELS stated that he has purchased at least 20 ounces of crack cocaine from SAINTIL. Anthony DANIELS stated that after he learned how to "cook" crack cocaine, DANIELS would purchase powder cocaine from SAINTIL. Anthony DANIELS stated he purchased 2 ounces of powder cocaine a day from SAINTIL. Anthony DANIELS paid $750.00 dollars for 1 ounce of powder cocaine and $800.00 dollars for one ounce of crack cocaine. Anthony DANIELS stated that SAINTIL lived in a green apartment on Keller Alley, in Selma, Alabama. DANIELS was present, on at least 4 occasions, when Jarkarta BONNER purchased a "split", 4 ½ ounces of crack cocaine, from SAINTIL. Anthony DANIELS stated SAITIL was a "major source" for powder cocaine and crack cocaine. Anthony DANIELS has seen SAINTIL with 4 "bricks" kilos of powder cocaine and Anthony Daniels was present while SAINTIL cooked 1 kilo of powder cocaine. Anthony DANIELS stated SAINTIL has "a lot of guns". SAINTIL has shotguns, SKS assault rifles, and hand guns.

12. On November 6, 2006, CS-2 was utilized to purchase approximately 28.4 grams of a white rock like substance believed to be crack cocaine from Guerrin SAINTIL, aka

6

"Black". Prior to attempting to make contact with SAINTIL, CS-2 informed your affiant that SAINTIL was driving a dark green BMW. CS-2 made contact with Tammy WARD via telephone. CS-2 inquired about purchasing (2) two ounces of crack cocaine and was advised, by Tammy WARD, that SAINTIL did not have (2) two ounces. CS-2 agreed to purchase (1) one ounce of crack cocaine. Tammy WARD told CS-2 that she and SAINTIL would meet the CS-2 at CS-2's location.

13. Tammy WARD called CS-2 a short time later and directed CS-2 to meet SAINTIL and Tammy WARD at the Comfort Inn, 1812 Hwy 14 East, Selma, AL. CS-2 was followed by ATF Special Agents as he/she responded to the Comfort Inn and purchased approximately (1) one ounce of a white rock like substance believed to be crack cocaine from SAINTIL. This purchase was audio recorded. After purchasing the suspected crack cocaine, CS-2 drove to a predetermined location to meet SA Peterson. CS-2 provided SA Peterson with a clear plastic bag containing a white rock like substance. CS-2 stated that while Tammy WARD brought the crack cocaine to the vehicle, Guerrin SAINTIL was standing by the rear entrance of the hotel. CS-2 further stated that he/she believed SAINTIL and WARD were staying, in the room near the back door, on the first floor of the hotel.

14. The suspected crack cocaine was left in the custody of the Selma Police Department in order to be sent to the lab at the Alabama Department of Forensic Sciences for testing. Subsequently, the Alabama Department of Forensic Sciences analysis revealed the presence of cocaine and determined the weight of the crack cocaine was 26.84 grams.

15. On November 7, 2006, at approximately 6:30 A.M., your affiant drove through the parking lot of the Comfort Inn, at 1812 Hwy 14 East, Selma, AL., and observed a dark green BMW parked near the rear entrance of the hotel. Your affiant recorded the vehicle tag, an Alabama Wildlife tag, 3K24J. TFA Susan Smith ran the vehicle tag which reveled that the vehicle was registered to Ernest MAXINO.

16. On November 7, 2006, your affiant queried Alabama Wildlife tag, 3K24J through the Law Enforcement Tactical System. The results of the query reviled the vehicle was registered under a Georgia State drivers license, to Ernest MAXINO.

17. On this same date, TFA Susan Smith received the registration information for Comfort Inn, at 1812 Hwy 14 East, Selma, AL., and room 116 was registered in the name of Ernest MAXINO. Room 116 is located, on the first floor, near the back exit of the hotel.

18. In January of 2006, TFA Susan Smith showed Detective Barnhill a Florida driver's license photo of Rodney SAINTIL. (See paragraph 5) Detective Barnhill advised TFA Susan Smith that the person in the photo was not the person present at the apartment, on Keller Avenue, on 4/26/05. On 6/23/06, TFA Susan Smith showed Detective Barnhill a

7

Florida drivers license photo of Guerrin SAINTIL. Detective Barnhill advised TFA Susan Smith that the person in the photo appeared to be the person present in the apartment, on Keller Avenue, on 4/26/05, when the firearm was recovered.

19. On Monday, January 15, 2007, CS-2 called Tammy WARD. The phone conversation was recorded. CS-2 inquired about purchasing (1) one ounce of crack cocaine. CS-2 could overhear over the telephone Tammy WARD relaying information Gurrien SAINTIL about the ounce that CS-2 wanted to purchase. CS-2 agreed to purchase (1) one ounce of crack cocaine for $800.00 dollars and was told that Tammy WARD and SAINTIL would meet CS-2 at his/her location. CS-2 was re-contacted a short time later by Tammy WARD via telephone and was informed that they were going to be there in approximately (1) hour.

20. SAINTIL arrived at the agreed location, driving a Nissan Maxima with an Alabama Wild Life tag, number 2K94R. CS-2 purchased approximately (1) one ounce of a white rock like substance believed to be crack cocaine from SAINTIL. This purchase was audio recorded. After purchasing the suspected crack cocaine, SAINTIL left the location and CS-2 was followed by ATF Special Agents to a predetermined location to meet SA Peterson. CS-2 provided SA Peterson with a clear plastic bag containing a white rock like substance, believed to be crack cocaine.

21. SA Peterson debriefed CS-2 as to the events that took place. CS-2 stated when Tammy WARD called CS-2, phone number (334) 356-5809 was displayed on CS-2's caller ID. (Subscriber information revealed that (334) 356-5809 was subscribed to by Ernest MAXINO, see paragraph 28) CS-2 stated, while Tammy WARD was talking to SAINTIL, CS-2 could hear SAINTIL in the background. CS-2 stated that he/she could hear SAINTIL and Tammy WARD saying that they were going to meet CS-2 at CS-2's location. When Tammy WARD called back and informed CS-2 that they were on their way, the number displayed on CS-2's caller ID was (334) 543-6276. (Subscriber information indicated that (334) 543-6276 is subscribed to by Ernest MAXINO, see paragraph 23). CS-2 stated that when SAINTIL arrived at the location, SAINTIL was alone. CS-2 gave the $800.00 dollars to SAINTIL and SAINTIL gave CS-2 the suspected crack cocaine.

22. The suspected crack cocaine was left in the custody of the Selma Police Department in order to be sent to the lab at the Alabama Department of Forensic Sciences for testing. Subsequently, the Alabama Department of Forensic Sciences analysis revealed the presence of cocaine and determined the weight of the crack cocaine was 25.71 grams.

23. On March 19, 2007, DEA Special Agent Tim Davis received subpoenaed subscriber information for the phone number, displayed on CS-2's caller ID, (334) 543-6276. Sprint Nextel records reflected the account is listed to Ernest Maxino, PO Box 55026, Irvine, California.

24. On March 20, 2007, DEA Special Agent Tim Davis received subpoenaed subscriber information for (678) 281-4496, an additional phone number of SAINTIL's, provided by CS-2. Sprint Nextel records reflected the account is listed to Ernest Maxino, 265 Buffington Drive, Union City, Georgia.

25. On March 26, 2007, your affiant conducted a public record search through Accurint. Accurint is a data source comprised of an electronic compilation of publicly available records regarding real estate holdings, utilities, telephone numbers, etc. Accurint is offered as a commercially available service of Lexis/Nexis. Ernest MAXINO's name and identifiers were queried through Accurint. The result of the query showed that MAXINO has utilities and a phone for the residence at 4111Oconee Dr., Apt. H, Montgomery, Alabama.

26. On March 26, 2007, your affiant observed in the driveway of the residence located at 4111 Oconee Drive, Apt. H, Montgomery, Alabama 36110, the same Nissan Maxima, Alabama Wildlife Tag No. 2K94R driven by SAINTIL during the drug transaction that took place on January 15, 2007, and which vehicle had been previously described by those interviewed by your affiant and as set forth previously in this affidavit. (See paragraph 20) On March 27, 2007, your affiant and SA Stephen Thompson observed the same vehicle parked at the same address, and on April 5, 2007, your affiant again observed the same vehicle at the same location.

27. On April 10, 2007, your affiant queried Alabama Wildlife tag, 2K94R through the Law Enforcement Tactical System. The results of the query reviled the vehicle was registered to Ernest MAXINO, under a Georgia State drivers license number 55217416.

28. On April 13, 2007, DEA Special Agent Tim Davis received subpoenaed subscriber information for the phone number, displayed on the CI's caller ID, (334) 356-5809. Knology Inc. records reflected the account is listed to Ernest Maxino, 4111Oconee Dr., Apt. H, Montgomery, Alabama.

29. On April 17, 2007, your affiant received a copy of Ernest MAXINO's Georgia drivers license number 55217416, from the State of Georgia, Department of Driver Services. After reviewing the Georgia drivers license, your affiant observed that the photo on the drivers license was a photo of Guerrin SAINTIL, with identifying information for Ernest MAXINO, with an address of 265 Buffington Dr., Union City, GA. 30291, on the license.

30. On April 24, 2007 your affiant received customer billing information, from Alabama Power, for 4111 Oconee Drive, Apt. H, Montgomery, AL 36110. Records maintained buy Alabama Power shows the primary account is listed under Ernest MAXINO (SSN

9

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) and his wife is listed as Tammy MAXINO (SSN: 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).

31. On this same date, your affiant queried Tammy MAXINO's social security number 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 through Law Enforcement Tactical System. The results of the query reviled the social security number was listed to Alabama Identification Card number I710025 under the name Tammy WARD (B/F, DOB: 08/12/1987, SSN: 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).

32. On this same date, your affiant conducted a telephonic interview with Postal Inspector Jim Tynan from the United Stated Postal Service. Inspector Tynan, U.S. Postal Service confirmed that Ernest MAXINO is currently receiving mail at 4111 Oconee Drive, Apt. H, Montgomery, Alabama, 36110-4212.

It is your affiant's belief that the person residing at 4111 Oconee Drive, Apt. H, Montgomery, Alabama, 36110-4212 who purports to be Ernest MAXINO is in fact Guerrin SAINTIL, who is involved in the distribution of crack cocaine as set forth previously herein.

Your affiant has investigated numerous drug/firearm cases during my approximately 6 years with ATF. During such investigations, I have worked closely with drug agents and have learned how drug organizations are organized and operate. I have made application and executed of numerous search warrants and arrest warrants for violations of Federal Firearms, Explosives and Narcotics Laws, which have resulted in successful prosecutions of firearm and narcotics violations. Your affiant is a graduate of the Federal Law Enforcement Training Center, the ATF National Academy, and has received extensive training in firearms, explosive and narcotics enforcement techniques. Specifically, I have been trained in federal narcotics investigations while at the Federal Law Enforcement Training Center. I am aware that firearms are commonly used by drug dealers for protection in their drug sales and are often traded for drugs and sold to buy drugs. The firearms used by illegal drug dealers are considered as "tools of the trade". Because firearm violations are so closely related to narcotics trafficking, I routinely investigate narcotics traffickers.

Based on my training, experience, and participation in this and in other investigations involving significant amounts of controlled substances, I know that drug traffickers operating at the level of Saintil's participation evidenced by the investigation to date, engage in drug distribution as a continuing activity which spans months or even years, because the trafficker's inventory of controlled substances fluctuates depending on availability and demand, and because drug traffickers commonly "front" drugs, or provide them on consignment, to their customers, the traffickers must maintain books, receipts, notes, ledgers, electronic records or some other type of record reflecting such transactions. Drug traffickers like Saintil must keep their records in some secure yet readily accessible place where they can be used and maintained, such as in homes, offices, places of business, computers, automobiles, or safe deposit boxes. Traffickers must keep these records of their illegal activities beyond the time during which controlled substances are actually in their possession, so that they can maintain contact with their criminal associates for future drug transactions and so that they can keep records of prior transactions for which they might be owed or owe inventory or money.

Drug traffickers like Saintil commonly hide controlled substances, drug proceeds, and records of their drug transactions in secure locations, like their homes, as well as in offices or places of business, garages, storage buildings or even their vehicles. Similarly, the traffickers have ready access to these items, and are able to conceal them from law enforcement agencies.

Drug traffickers like Saintil conceal controlled substances, currency, financial instruments, documents relating to financial transactions, precious metals, jewelry, other items of value, and proceeds of drug transactions, all of which constitutes evidence of drug trafficking activities. Additionally, such items constitute evidence of transactions establishing the generation, transfer, concealment, and expenditure of large sums of money made from trafficking in controlled substances. Drug traffickers maintain these items in secure yet convenient locations, such as their homes, offices, places of business, garages, storage buildings, automobiles, and safe deposit boxes.

Drug traffickers commonly maintain addresses or telephone numbers in books or papers which reflect names, addresses, and telephone, beeper or pager numbers for their drug trafficking associates. These items are sometimes in code and are sometimes kept in computers.

Traffickers like Saintil frequently have photographs of themselves, their associates, their property and controlled substances, which are usually maintained in their homes. Such photographs constitute evidence of their drug trafficking activities, establishing their connections with items of property, with each other, and with drugs.

As I have observed in the past drug traffickers like Saintil usually keep paraphernalia to use, manufacture, pack, cut, weigh, and distribute controlled substances. Such paraphernalia in crack cocaine or cocaine cases includes smoking devices, scales, plastic bags, heat sealers, rolling papers, and straws.

Drug traffickers like Saintil who are involved in distribution of controlled substances such as crack cocaine or cocaine from source countries or transshipment locations outside the United States generally possess documentation, such as telephone records, visas, passports, correspondence, shipping receipts, wire transfers, airline ticket receipts, and the like, which pertain to the acquisition, transportation, shipment, or receipt of or payment for controlled substances, and which evidences the trafficker's participation in the illegal drug scheme.

Drug traffickers like Saintil who have generated proceeds from illegal drug distribution frequently use these patterns or schemes to create the appearance of legitimate income so that they can eventually convert the proceeds or asset to themselves or to a nominee under their control. In this way, the traffickers can enjoy and use their properties while attempting to conceal their illegal activities which generated the proceeds or asset.

I know that courts have recognized that unexplained wealth is probative evidence of crimes motivated by greed, which includes trafficking in controlled substances and illegal schemes to conceal drug-generated proceeds.

I believe that these facts establish probable cause to search the residence at 4111 Oconee Drive, Apt. H, Montgomery, Alabama 36110-4214 and the two vehicles described previously herein as a 2002 Nissan Maxima, green in color with an Alabama Wildlife Tag No. 2K94R and a 1997 BMW, Alabama Wildlife Tag No. 3K24J in the curtilage of that residence for the items listed in the search warrant.

The foregoing is true and correct to the best of my knowledge, information and belief.

_____
Special Agent Ronald J. Peterson
Bureau of Alcohol, Tobacco, Firearms and Explosives

Sworn to and subscribed before me
this 26th day of April, 2007.

_____
Honorable Terry F. Moorer
United States Magistrate Judge

12